UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GLORIA ENWEREJI and § | |
| LEONARD ENWEREJI (for and on § | |
| behalf of similarly situated persons) § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. H-05-2547 |
| § | |
| NEW CINGULAR WIRELESS § | |
| SERVICES, INC. (formerly AT&T § | |
| Wireless, Inc.), § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. # 25). For the reasons set forth below, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART.**

### I. BACKGROUND

Plaintiffs Leonard and Gloria Enwereji, a husband and wife, claim that they were wrongfully induced into switching their wireless (cellular) service provider from T-Mobile Wireless Services, Inc. ("T-Mobile") to AT&T Wireless Services, Inc. ("AT&T Wireless"), which subsequently became New Cingular Wireless Services, Inc. ("New Cingular" or "AT&T/New Cingular").[1] The following facts are undisputed.

On or about June 25, 2004, Mr. and Mrs. Enwereji received a phone call on their T-Mobile cellular phone offering them two new wireless phones if they would agree to switch their wireless service provider to AT&T Wireless. Unbeknownst to the Enwerejis, the party

---

[1] AT&T Wireless was acquired by Cingular Wireless LLC in October of 2004, and the name of AT&T Wireless was changed to New Cingular Wireless at that time.

responsible for the telephone call was not in fact AT&T Wireless, but Digital Communication Warehouse ("DCW"), an independent wireless service and equipment dealer.  Yet, based on these telephonic representations, Plaintiffs cancelled their service with T-Mobile and switched to AT&T Wireless.  They never received, however, the two cellular phones that they had been promised.

Mr. and Mrs. Enwereji called AT&T/New Cingular customer care several times to complain about not receiving their cellular phones.  AT&T/New Cingular attempted to assist the Enwerejis in correcting the problem by providing them with DCW's contact information and contacting DCW itself.  Nonetheless, AT&T/New Cingular continued to issue invoices to the Enwerejis for wireless service and, on January 31, 2005, Plaintiffs' account was referred to Financial Asset Management Systems, Inc., an outside collection agency.  The unpaid balance on the Enwerejis' account at that time was $191.00, and that amount was reported as delinquent on their credit report.  Eventually, on May 3, 2005, Defendant cleared the balance due on the account.

Based on these events, Plaintiffs have filed suit against AT&T/New Cingular for alleged violations of the Texas Deceptive Trade Practices Act ("DTPA"), common law fraud, tortious interference with an existing contract, and defamation.  Defendant has moved for summary judgment on all claims.

## II. SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented.  *See* Fed. R. Civ. P. 56(c).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* at 255.

### III. DTPA AND COMMON LAW FRAUD CLAIMS

Plaintiffs claim that Defendant's failure to provide the promised cellular phones constitutes a violation of the DTPA and common law fraud. Defendant maintains that it cannot be liable on either theory because DCW, an independent entity, was responsible for both the promise of free cellular phones and the subsequent failure to deliver them. Plaintiffs concede that fact, yet nonetheless argue that New Cingular should be held liable on the basis of agency principles. Plaintiffs do not contend that DCW had actual authority to bind Defendant, but rather had the apparent authority to act as New Cingular's agent.

In order to establish apparent authority, there must be evidence of conduct by the principal relied upon by the plaintiff that would lead a reasonably prudent person to believe that an agent had authority to act on the principal's behalf. *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984). Thus, to establish that DCW had apparent authority to act for AT&T/New Cingular, Plaintiffs must show that (1) they had a reasonable belief that DCW was an agent of AT&T/New Cingular, (2) such belief was generated by some conduct on the part of AT&T/New Cingular, and (3) they justifiably relied on the appearance of authority. *See Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 949-50 (Tex. 1998). Importantly, the conduct of the principal

3

only—not the conduct of the agent—is relevant to the issue of apparent authority. *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 952-53 (Tex. 1996).

In this case, Plaintiffs cannot satisfy the second requirement for establishing apparent authority. They have offered no evidence that AT&T/New Cingular engaged in any conduct prior to the phone call in question that would lead a reasonably prudent person to conclude that it had authorized DCW to make representations on its behalf. The Court does not doubt that Plaintiffs genuinely believed that the DCW employee who telephoned them and promised them two free cellular phones was an agent of AT&T/New Cingular. That belief, however, was generated by the statements made by DCW during the phone call, rather than by any conduct on the part of AT&T/New Cingular. Since the actions of the alleged agent are irrelevant to the apparent authority determination, DCW's conduct is insufficient to give rise to an agency relationship.

Still, Plaintiffs do point out that AT&T/New Cingular subsequently issued invoices to Mr. and Mrs. Enwereji for wireless service. This conduct cannot support a finding of apparent authority since it occurred *after* Plaintiffs relied on DCW's telephonic representations, but Plaintiffs argue that it demonstrates that AT&T/New Cingular ratified DCW's conduct. A principal ratifies and becomes liable for the unauthorized conduct of an alleged agent if the principal retains the benefits of the action after acquiring full knowledge of the unauthorized conduct. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 536 (Tex. 2002). To establish ratification, a plaintiff must prove that the alleged principal had knowledge of the conduct and then voluntarily, intentionally chose to retain the benefits of the conduct in light of that knowledge. *Johnson v. Smith*, 697 S.W.2d 625, 630 (Tex. App.—Houston 1985, no writ).

Defendant argues that it did nothing to ratify DCW's actions after it learned that DCW had failed to deliver the cellular phones to the Enwerejis, and in fact did everything it could to help the Enwerejis remedy the situation. On the contrary, Plaintiffs have produced evidence that AT&T/New Cingular continued to issue invoices to the Enwerejis after it was informed of DCW's conduct, and then even sent their account to collections. AT&T/New Cingular claims that the report to the collection agency was automatic and therefore inadvertent and unintentional, but the fact that it happened is sufficient evidence to raise a fact question as to whether AT&T/New Cingular voluntarily and intentionally attempted to retain the benefit of DCW's actions after acquiring full knowledge of its conduct. Thus, Defendant's motion for summary judgment on the DTPA and common law fraud claims is **DENIED**.

## IV. TORTIOUS INTERFERENCE WITH EXISTING CONTRACT CLAIM

Plaintiffs also allege that AT&T/New Cingular tortiously interfered with their existing contract with T-Mobile by inducing them to switch their wireless service provider to AT&T/New Cingular. However, Plaintiffs have cited no precedential authority permitting the party that breached the existing contract to bring an action for tortious interference. That cause of action generally lies with the non-breaching party to the contract, and the Court sees no reason to extend precedent in this case. Defendant's motion for summary judgment on the tortious interference with existing contract claim is therefore **GRANTED**.

## V. DEFAMATION CLAIM

Finally, Plaintiffs claim that AT&T/New Cingular defamed them by reporting their account as delinquent and referring it to an outside collection agency. Reports by mercantile or other credit-reporting agencies made in good faith to an entity having a legitimate interest in the information are privileged, as long as they are made without actual malice. *Dun & Bradstreet,*

*Inc. v. O'Neil*, 456 S.W.2d 896, 898 (Tex. 1970).  The Fifth Circuit has defined "actual malice" in this context by reference to the *New York Times* standard, under which a statement is made with actual malice if it was made "with knowledge that it was false or with a reckless disregard of whether it was false or not."  *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).

Plaintiffs claim that AT&T/New Cingular knew that its report to the collection agency was false because the Enwerejis had already informed AT&T/New Cingular that they had not received their cellular phones.  The Fifth Circuit has held, however, that evidence that a defendant knows that a customer *disputes* a particular report is not sufficient to show that the defendant knows that the report is in fact false.  *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 470 (5th Cir. 2006).  In this case, then, evidence that the Enwerejis informed AT&T/New Cingular that they should not be billed for their wireless service because they had not received their cellular phones is not sufficient evidence that AT&T/New Cingular *knew* such a fact to be true.

Alternatively, the Fifth Circuit has held that "reckless disregard" may be established with evidence that a defendant "*in fact entertained serious doubts* as to the truth of his publication." *Id.* at 471 (citing *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).  In this case, Plaintiffs have produced evidence that they informed AT&T/New Cingular of the fact that they did not receive the cellular phones they were promised, and that AT&T/New Cingular then attempted to contact DCW to rectify the situation.  These attempts made by Defendant on the Enwerejis' behalf suggest that AT&T/New Cingular gave some credence to the Enwerejis' complaints and may have in fact entertained doubts as to the truth of their statement to the collection agency that the Enwerejis' account was delinquent.  AT&T/New Cingular again argues that the report to the collection agency was made automatically and inadvertently, which can at most indicate

6

negligence on its part.  But whether AT&T/New Cingular acted with negligence or recklessness in reporting the Enwerejis' account as delinquent is a question of fact that must be decided by a jury.

In a final attack on Plaintiffs' defamation claim, Defendant also contends that Plaintiffs have provided no evidence that they have suffered harm as a result of the alleged defamation. When defamation per se is not alleged, as it is not here, a plaintiff must produce evidence that the allegedly defamatory statement tended to injure his or her reputation.  *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984).  Plaintiffs have produced evidence that their AT&T/New Cingular account was reported as delinquent on their credit report, and that financial institutions cited "delinquent accounts" as a reason for denying loan applications.  Thus, the Court finds that Plaintiffs have provided sufficient evidence to raise a question of fact as to whether they suffered harm to their reputation.  Defendant's motion for summary judgment on Plaintiffs' defamation claim is therefore **DENIED**.

## VI. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment on Plaintiffs' tortious interference with an existing contract claim is **GRANTED**, and the motion for summary judgment on Plaintiffs' DTPA, common law fraud, and defamation claims is **DENIED**.

In their response to Defendant's motion for summary judgment, Plaintiffs requested summary judgment to be rendered on their behalf.  Plaintiffs' response was filed after the dispositive motion deadline.  Plaintiffs subsequently filed a Motion to Extend the Expert Witness Designation and Dispositive Motion Deadline (Doc. # 40), but that motion is **DENIED** for failure to show good cause.

**IT IS SO ORDERED.**

**SIGNED** this 15th day of December, 2006.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL
FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY
EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT**